UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BD PERFORMING ARTS,<br><br>    Plaintiff,<br><br>v.<br><br>B.A.C. MUSICAL INSTRUMENTS, LLC, et al.,<br><br>    Defendants. | Case No. 22-cv-02050-JSW<br><br>**ORDER DENYING, WITHOUT PREJUDICE, *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 12 |

This matter comes before the Court upon consideration of the *ex parte* application for a temporary restraining order ("TRO") filed by Plaintiff BD Performing Arts ("Plaintiff").[1] The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it has had the benefit of oral argument.[2] For the reasons that follow, the Court DENIES Plaintiff's application, without prejudice to renewing its request for injunctive relief by way of a regularly noticed motion for preliminary injunction.

**BACKGROUND**

Plaintiff is a non-profit organization "focused on youth marching bands and related activities." (Compl. ¶ 2.) It is the owner of several registered trademarks for "SYSTEM BLUE" (the "SYSTEM BLUE Marks" or the "Marks") and has registered the Marks for use with, *inter alia*, percussion and wind instruments. (Compl. ¶¶ 20-23, Exs. A-D.) In 2014 or 2015, Plaintiff

---

[1] Although captioned *ex parte,* Plaintiff does not seek true *ex parte* relief. *See, e.g., In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193-94 (C.D. Cal. 1989). Instead, Plaintiff's application is what the court in *Intermagnetics* described as a "hybrid" application, i.e., Plaintiff is seeking relief on an emergent basis with notice to the opposing parties.

[2] Defendant Tianjin Jinbao Musical Instruments Co., Ltd. ("Jinbao"), a Chinese corporation, has not yet appeared and did not oppose Plaintiff's application.

created a for-profit subsidiary, Azulo, Inc. ("Azulo") to "engage in the development and manufacture of musical instruments and accessories to be sold under the SYSTEM BLUE Marks." (Declaration of David Gibbs ("Gibbs Decl."), ¶ 12.)[3]

Mr. Gibbs, Plaintiff's former CEO, attests that Plaintiff granted Azulo a sublicensable license of SYSTEM BLUE Marks in exchange for royalty payments. (*Id.* ¶13.)[4] On December 10, 2015, Azulo entered into a Distribution and Marketing Services Agreement ("DMSA") with defendants RMI, LLC ("RMI") and its subsidiary B.A.C. Musical Instruments, LLC d/b/a BAC Music Kansas City ("BAC") (collectively "RMI Defendants"). (Gibbs Decl., ¶ 29, Ex. C (DMSA).)[5] Pursuant to that agreement, Azulo arranged for the manufacture of instruments using the SYSTEM BLUE Marks, and the RMI Defendants marketed, sold, and arranged for delivery of those instruments. (*See* DMSA, Background § D, §§ 1.2-1.14, 3.1; Declaration of Greg Wohler ("Wohler Decl."), ¶ 4.)

Azulo agreed "not to transfer its intellectual property rights of the musical instruments and other items … during the term of [the DMSA] without" the RMI Defendants' consent. (DMSA § 4.1.) However, the parties agreed that if one of those exceptions applied, it was conditioned upon the DMSA "remaining in full force and effect[.]" (*Id.*) The RMI Defendants, in turn, agreed they would not adopt or use any variation of the SYSTEM BLUE Marks without Azulo's prior written consent. (*Id.* §§ 4.2, 4.5.)

The DMSA has a ten-year term, with the proviso that it could be "terminated by mutual agreement of the parties." (*Id.* §§ 3.1, 3.2.) Absent mutual agreement, the parties agreed the

---

[3]  Plaintiff alleges that Azulo was formed in 2014, and Mr. Gibbs attests that it was formed in 2015. That discrepancy is not material to resolution of Plaintiff's application.

[4]  Plaintiff has not put a copy of its license agreement with Azulo in the record.

[5]  Although the copy Plaintiffs submitted is not signed by Defendants, Defendants state they have a signed copy of the DMSA. The parties agreed the DMSA would be governed by Kansas law and agreed that "[a]ny dispute regarding this Agreement shall be brought in the District Court of Johnson County Kansas, or the Federal Court located in Kansas City, Kansas, where the parties agree to submit to jurisdiction and venue." (DMSA, §§ 2, 9.2.) The RMI Defendants did not invoke those provisions and have not contested personal jurisdiction. However, at the hearing, the parties did agree that Kansas law would apply for purposes of interpreting the DMSA.

DMSA could be "terminated by any party … in the event that another party materially breaches a material term" and failed to cure the breach within 60 days. (*Id.* § 3.1.) In the event a party failed to make a payment, "the cure period shall be fifteen (15) days instead of sixty (60) and after two failures of a party to make timely payment in any calendar year, the other party may terminate the [DMSA] immediately upon the occurrence of a third failure." (*Id.*) Finally, the parties agreed that the DMSA could be terminated if one of the parties filed for bankruptcy. (*Id.* § 3.4.) The parties also agreed that the DMSA "may be modified only by a written document signed by all of the parties hereto." (*Id.* § 9.3.)

Plaintiff is not a party to the DMSA. However, on December 10, 2015, it entered into a "Commitment of Intellectual Property Rights Agreement" with the RMI Defendants (the "IP Agreement"). In that agreement, Plaintiff agreed that it would "take any and all action necessary to ensure that Azulo … has all intellectual property rights claimed under the [DMSA], including, but not limited to those set forth in Sections 4.1 and 4.2" of the DMSA. (Gibbs Decl., ¶ 21, Ex. D.)[6]

It is undisputed that Azulo ceased operations in 2020 but did not file for bankruptcy. On March 30, 2020, Mr. Gibbs sent Mr. Wohler a letter, advising the RMI Defendants that Plaintiff had terminated Azulo's license to use the SYSTEM BLUE Marks because of Azulo's insolvency. Mr. Gibbs advised Mr. Wohler that, as a result, Azulo "no longer [has] authority to manufacture instruments under the SYSTEM BLUE trademark[.]" (Gibbs Decl., ¶ 23, Ex. E.)[7] Mr. Gibbs also stated Azulo preferred "not to incur the expense of filing a bankruptcy action and *then* terminating the Agreement, … we prefer to mutually agree to terminate it." (*Id.* (emphasis added).) Mr. Wohler denies that the RMI Defendants agreed to a mutual termination. (Wohler Decl., ¶ 9.)

---

[6] That agreement also is governed by Kansas law and provides that "[a]ny dispute regarding this Agreement shall be brought in the District Court of Johnson County, Kansas." (IP Agreement, § 2.)

[7] Mr. Gibbs also attests he notified Jinbao that Azulo had become insolvent and that it would not order any additional instruments. (Gibbs Decl. ¶¶ 15, 25; *see also*, Pak Decl., ¶ 12, Ex. G (2019 Agreement).) Although Jinbao has not yet appeared, the Court concludes Plaintiff's delay in seeking injunctive relief weights against granting the TRO as to Jinbao. If Plaintiff seeks a preliminary injunction, it shall be prepared to clearly address the facts demonstrating the Court would have a basis to assert personal jurisdiction over Jinbao.

1   Although the RMI Defendants suggested entering a direct license with Plaintiff, Plaintiff declined.
2   (Wohler Decl., ¶ 7.)
3         According to Plaintiff, after it notified Defendants that the various agreements had been
4   terminated, it discovered that BAC was continuing to sell instruments manufactured by Jinbao
5   under the SYSTEM BLUE Marks.  Plaintiff initially believed that those instruments were existing
6   inventory, rather than newly manufactured instruments.[8]  However, on April 16, 2021, the RMI
7   Defendants' counsel sent a letter to Plaintiff's counsel, in which they advised that they were using
8   Jinbao to manufacture and distribute instruments branded with the SYSTEM BLUE Marks.  (*See,*
9   *e.g.,* Gibbs Decl., ¶¶ 27-47; Pak Decl., ¶ 3, Ex. A.)  Plaintiff's counsel responded by stating the
10  RMI Defendants were infringing Plaintiff's SYSTEM BLUE Marks.  (Pak Decl., ¶ 4, Ex. B.)
11        The RMI Defendants do not dispute that they continue to sell products using the SYSTEM
12  BLUE Marks.  They assert they have the right to do so because Azulo did not validly terminate the
13  DMSA.  (Wohler Decl., ¶¶ 10-11, 27, 30-31; *see also id.* ¶¶ 23-41 (attesting to reasons why
14  Defendants could not stop performing under DMSA and impacts to Defendants' business if
15  injunction issues).)[9]
16        On March 30, 2022, Plaintiff filed the Complaint in this action.  Plaintiff seeks emergency
17  injunctive relief for alleged violations of the Lanham Act and the Tariff Act, 19 U.S.C. section
18  1526.
19        The Court will address additional facts as necessary in the analysis.

## ANALYSIS

21  Preliminary injunctive relief, whether in the form of a temporary restraining order or a
22  preliminary injunction, is an "extraordinary and drastic remedy" that is never awarded as of right.
23  *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted).  In order to obtain such
24  relief, Plaintiff must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer

---

[8] In September 2020, Plaintiff's counsel recorded registrations with the United States Custom and Border Protection Service.  (Declaration of Eugene Pak ("Pak Decl."), ¶ 11, Ex. F.)

[9] Defendants advised Plaintiff of this position in a letter dated August 28, 2020.  (Wohler Decl., ¶ 22, Ex. 9.)

irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In *Alliance for the Wild Rockies v. Cottrell*, the Ninth Circuit held that the "serious questions" sliding scale approach survives *Winter*. 632 F.3d 1127, 1134-35 (9th Cir. 2011). Thus, a court may grant a TRO if a plaintiff demonstrates that there are serious questions going to the merits and a hardship balance that tips sharply in its favor, if the other two elements of the *Winter* test are also met. *Id.* at 1132. This allows a court "to preserve the status quo where difficult legal questions require more deliberate investigation." *See Sencion v. Saxon Mortg. Servs., LLC*, No. 10-cv-3108 JF, 2011 WL 1364007, *2 (N.D. Cal. April 11, 2011).

**A.     Likelihood of Success or Substantial Questions.**

In order to prevail on its Tariff Act claims, Plaintiff must show that the RMI Defendants are using the SYSTEM BLUE Marks without its written consent. *See* 19 U.S.C. § 1526(a). In order to prevail on its Lanham Act claims, Plaintiff must show it owns valid and protectible trademarks and that the RMI Defendants' conduct is likely to cause confusion. In general, that would require analysis of the factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979). When a dispute arises between a licensee and licensor, there often is no need to compare the marks because, as here, they are identical. *See, e.g., Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008). A licensee may infringe the licensor's trademark where it exceeds the scope of the license. *Cf., MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) (licensee may engage in copyright infringement if its use of the copyright exceeds the scope of the license); *see also Robert Trent Jones II*, 537 F. Supp. 2d at 1065 ("Where a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion.").[10]

Here, Plaintiff is not a party of the DMSA. Thus, it has a strong argument that the RMI

---

[10]   The RMI Defendants do not dispute that Plaintiff has protectible ownership interests in the SYSTEM BLUE Marks and do not dispute they are continuing to market and sell instruments bearing the Marks. The RMI Defendants also do not dispute that the agreement between Jinbao and Azulo terminated at the end of 2020.

5

1  Defendants are infringing the SYSTEM BLUE Marks and are importing them without written
2  consent.  Plaintiff also argues that even if the DMSA is relevant, which it disputes, Azulo
3  terminated the DMSA in 2020 based on the RMI Defendants' failure to make two timely
4  payments in a calendar year.  (DMSI § 3.3; Wohler Decl., ¶ 26, Ex. F.)  The RMI Defendants
5  respond that the parties' course of conduct demonstrates they often left invoices unpaid and
6  reconciled their accounts through "check swaps."  (*See, e.g.,* Declaration of Charles Pridgen, ¶¶
7  13-25.)  Thus, the RMI Defendants argue that even though the DMSA contains an integration
8  clause, the parties have modified that term.

9       The RMI Defendants also attest that the ten-year term was material because they "knew it
10 would take about five years to build the business."  (Wohler Decl. ¶ 5.)  In addition, they argue
11 that the DMSA obligates them to sell instruments branded with the SYSTEM BLUE Marks, and
12 that the Court should construe the DMSA to contain an implied term that they can manufacture the
13 instruments to meet that obligation.  Finally, the RMI Defendants argue that in the event the
14 SYSTEM BLUE Marks were transferred to an Azulo affiliate, the DMSA was to remain in full
15 force and effect.  Plaintiff responds that the IP Agreement never guaranteed that Azulo would
16 remain in business and that the Marks have not been transferred.

17      Although the RMI Defendants may ultimately be able to persuade a fact-finder that the
18 DMSA remains in effect, there remain questions about whether they have exceeded the rights they
19 were granted under that agreement.  Accordingly, the Court concludes that Plaintiff has met its
20 burden to show there are serious questions going to the merits of its claims.

21 **B.  Irreparable Harm.**

22      When a court finds a plaintiff has established it is likely to succeed on the merits of a claim
23 for trademark infringement, the plaintiff is entitled to a "rebuttable presumption of irreparable
24 harm[.]"  15 U.S.C. § 1116(a).  It is not clear that Plaintiff would be entitled to this presumption
25 based solely on a showing of substantial questions going to the merits.  For now, the Court will
26 begin with a presumption of irreparable harm.  Plaintiff did not present any evidence that
27 customers have complained about the quality of the instruments, but they note that the RMI
28 Defendants changed information on the warranty cards to direct inquiries away from Azulo.  At

6

the hearing they also argued that there have been a few instances of confusion, but those facts are not in the record before the Court.

Undue delay also may serve to rebut a presumption of harm. *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (internal citations and quotations omitted). In general, "courts are loath to withhold relief solely on that ground." *Id.* However, Plaintiff was expressly notified in April 2021 that the RMI Defendants continued to sell instruments sold with the SYSTEM BLUE Marks *and* that Jinbao was making those instruments. (Pak Decl., ¶ 3, Ex. A.)[11] Plaintiff did not seek equitable relief at that time despite the RMI Defendants' admissions. Plaintiff also has not presented the Court with direct evidence of harm to its reputation or goodwill.

Accordingly, the Court concludes the current record does not support applying a presumption of irreparable harm.

**C.  Balance of Equities.**

Even if Plaintiff had established the presumption should apply, the Court "must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 541, 542 (1987); *see also HiQ Labs v. LinkedIn*, -- F.4th --, 2022 WL 1132814, at *6 (9th Cir. Apr. 18, 2022). In *HiQ,* the Ninth Circuit affirmed the district court's finding that the plaintiff would suffer irreparable harm and that the balance of equities weighed in its favor, based on evidence that its business model depended on access to the defendant's data. Without access to that data, the plaintiff would go out of business. 2022 WL 1132814, at *6.

The RMI Defendants attest that "the inability to sell System Blue instruments would result in the shutdown of Defendants' business" and if they are forced to breach contracts, it will damage their reputation and good will. (Wohler Decl., ¶¶ 33, ¶¶ 38-39.) On reply, Plaintiff put forth evidence that suggests the RMI Defendants do sell other instruments. (Supp. Gallant Decl. ¶ 3.)

---

[11] Mr. Gallant attests that "on information and belief" Jinbao informed Conn-Selmer, Plaintiff's "endorsee", that it was not making new instruments using the SYSTEM BLUE Marks. (Supplemental Declaration of Shaun Gallant ("Supp. Gallant Decl."), ¶ 4.) However, Mr. Gallant provides no details about when Jinbao supposedly made those statements, so the RMI Defendants' April 16, 2021 letter stands unrebutted.

They also argue that the RMI Defendants' alleged predicament is caused by their continued unauthorized use of the SYSTEM BLUE Marks. At the hearing, the RMI Defendants, through counsel, stated that they could rebut Plaintiff's evidence.

On balance and on the existing record, the Court concludes the balance of equities does not tip sharply in Plaintiff's favor. Accordingly, the Court DENIES Plaintiff's application for a temporary restraining order. However, this ruling is without prejudice to renewing its request for injunctive relief through a regularly noticed motion for a preliminary injunction. If Plaintiff does move for a preliminary injunction, the parties shall be mindful of the analysis set forth in this Order and shall focus their arguments and evidentiary showings accordingly.

**IT IS SO ORDERED**.

Dated: April 25, 2022

JEFFREY S. WHITE
United States District Judge